**STATE of Tennessee, Appellee,**

v.

**Robert COLE, Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

March 10, 1982.

Rehearing Denied April 8, 1982.

Permission to Appeal Denied by Supreme Court June 21, 1982.

Dale Quillen, Lucinda E. Smith, Nashville, F. Dulin Kelly, J. Randall Exum, Hendersonville, for appellant.

William M. Leech, Jr., Atty. Gen., David M. Himmelreich, Asst. Atty. Gen., Nashville, Lawrence Ray Whitley, Dist. Atty. Gen., Gallatin, for appellee.

## OPINION

TATUM, Judge.

The appellant, Robert Cole, was convicted of being a habitual drug offender (T.C.A. § 52–1432(d)) with punishment at 15 years imprisonment and a $10,000.00 fine. After considering the eleven issues presented by the appellant, we conclude that there is no reversible error. We affirm the judgment of conviction.

In issues I through IV, the appellant attacks the constitutionality of the Habitual Drug Offender Act, T.C.A. § 52–1432(d), on various grounds. On February 5, 1982, since the filing of the appellant's brief, the Tennessee Supreme Court has resolved these issues contrary to the appellant's contentions. See *State v. Earnest Hinsley*, 627 S.W.2d 351 (Tenn.1982), filed at Nashville. These issues are overruled.

The appellant says that the presentment failed to charge him with a violation of T.C.A. § 52–1432(d). For convenience, we will set forth the provisions of § 52–1432(d):

"(d)(1) It shall be unlawful and shall constitute a Class X felony for a person to be engaged as a habitual drug offender. As used in this subsection, a 'habitual drug offender' is defined as one who engages in the protracted and repeated manufacturing, delivering, selling, processing with intent to manufacture, deliver or sell or conspiring with another with intent to manufacture, deliver or sell or possess with intent to manufacture, deliver or sell any controlled substance under any schedule or combination of schedules, unless a person is otherwise permitted by law to engage in one or more of the activities included herein.

(2) To convict a person under the provisions of this subsection, the state must prove as elements of the offense:

(A) Three or more violations of subsections (a) or (c) occurring at least one day apart for at least three of the violations and that three or more violations involve either schedule I, II or III controlled substances or combinations thereof, or

(B) Five or more violations of subsections (a) or (c) occurring at least one day apart for at least five of the violations and that five or more violations involve either schedule I, II, III, IV, V or VI controlled substances or any combinations thereof.

(3) The indictment for a violation of this subsection shall charge that the defendant is a habitual drug offender, and

the separate transactions shall be listed as overt acts within the same count. Nothing herein shall prohibit additional counts charging the overt acts as separate and additional offenses; provided, that the jury shall find the defendant guilty of either one or more overt acts as separate offenses or as a habitual drug offender but not both. The state shall not be required to elect submission to the jury of the several counts.

(4) A violation of this subsection shall constitute a Class X felony and shall be punishable by a determinate sentence of not less than ten (10) years nor more than life in the state penitentiary and in addition thereto may be fined not more than two hundred thousand dollars ($200,000)."

The presentment charges that the appellant:

"heretofore from on or about the 24th day of November, 1979, and continuously thereafter, up to and including on or about the 16th day of January, 1980, in the County and State aforesaid, did unlawfully and feloniously conspire and agree with Patrick Kane, who is not named as a defendant in this indictment, to engage in the protracted and repeated possession with intent to sell controlled substances under Schedule II of Chapter 14 of the Tennessee Drug Control Act, and the Grand Jurors, upon their oaths do say that ROBERT COLE, by reason of this conspiracy with Patrick Kane, is a habitual drug offender.

Among the means by which ROBERT COLE and Patrick Kane would effect the object of the conspiracy was the following:

It was a part of the conspiracy that Patrick Kane would and did negotiate with a buyer of controlled substances, then he would and did contact ROBERT COLE in order to obtain controlled substances from ROBERT COLE to sell.

In furtherance of said conspiracy and to effect the objects thereof, ROBERT COLE and Patrick Kane committed the following overt acts, among others:

1. On or about November 24, 1979, ROBERT COLE delivered to Patrick Kane in Hendersonville, Tennessee, approximately 42 Quaalude tablets containing methaqualone, a Schedule II controlled substance, so that Patrick Kane could unlawfully sell said tablets;

2. On or about November 24, 1979, Patrick Kane did knowingly and unlawfully sell said 42 Quaalude tablets to T. B. I. Narcotics Agent Donna Pence, who was then working in an undercover capacity;

3. On or about December 14, 1979, ROBERT COLE delivered approximately 200 Quaalude tablets containing Methaqualone, a Schedule II controlled substance, to Patrick Kane so that Patrick Kane could unlawfully sell said tablets;

4. On or about December 14, 1979, Patrick Kane knowingly and unlawfully did sell said 200 Quaalude tablets to T. B. I. Narcotics Agent Donna Pence;

5. On or about January 12, 1980, ROBERT COLE delivered approximately one-half ounce of cocaine, a Schedule II controlled substance, to Patrick Kane so that Patrick Kane could unlawfully sell said cocaine;

6. On or about January 12, 1980, Patrick Kane did knowingly and unlawfully sell said one-half ounce (approximate) of cocaine to T. B. I. Narcotics Agent Donna Pence;

7. On or about January 16, 1980, at the Rivergate Mall area of Davidson County, Tennessee, ROBERT COLE met and talked with Patrick Kane and T. B. I. Agent Donna Pence, and ROBERT COLE discussed with them future illegal deliveries and sales of cocaine, a Schedule II controlled substance;

against the peace and dignity of the State of Tennessee."

Section (d)(1) defines a habitual drug offender as one who engages in the protracted and repeated violations of the drug laws either by engaging personally in the illicit drug trade or through another with whom he has conspired to trade illicitly. A conspiracy is not required for a violation; an individual acting alone may violate the stat-

ute. The elements of the offense are set out in subsection (d)(2).

Subsection (d)(2)(A) requires three or more violations by a defendant, acting personally or through co-conspirators, of manufacturing, delivering, selling, or possessing with intent to manufacture, deliver or sell a schedule I, II, or III controlled substances. The violations must occur on separate days.

 Contrary to the appellant's assertion, the presentment charges a violation of subsection (d)(2)(A). It alleges a conspiracy with Patrick Kane and specifies three deliveries made by the appellant personally and three deliveries made by the co-conspirator, Patrick Kane, in furtherance of the conspiracy. The indictment charges six overt acts of delivering schedule II controlled substances on three separate days. There is no merit to this issue.

 In issues VI, X and XI, the appellant attacks the sufficiency of the evidence. Agent Donna Pence, Tennessee Bureau of Investigation, testified that, acting pursuant to contacts with Lieutenant John Griggs at the Tennessee State Penitentiary, she contacted Patrick Kane on November 24, 1979. Agent Pence, working "undercover," inferred to Kane that she was the girlfriend of Tony Bouchard, an inmate in the penitentiary. Kane agreed to sell Ms. Pence 42 Quaaludes for $250.

Kane was an employee of the penitentiary and worked parttime at Maple Motor Car Lot. As prearranged, Ms. Pence went to Maple Motors on November 24, 1979 where she made the purchase of 42 Quaaludes from Kane. Ms. Pence testified that, as she and Kane went into a backroom, she observed the appellant and a small boy standing in the car lot office.

On December 14, 1979, Ms. Pence purchased an additional 200 Quaaludes from Kane for the price of $850. On this occasion, Kane asked Ms. Pence if she would be interested in buying cocaine.

Ms. Pence further testified that Kane contacted her on January 9, 1980 and told her that he "had discussed the cocaine purchase with his supplier." On January 12, 1980, Ms. Pence met Mr. Kane and arrested him after purchasing one-half ounce of cocaine from him for $1,150.

After Kane's arrest, he agreed to cooperate with law enforcement officers in exchange for lenient disposition of the charges against him. Kane set up a meeting on January 16, 1980, between Ms. Pence, the appellant and himself in a parking lot at Goodlettsville. Ms. Pence waited in the parking lot until Kane drove in with the appellant. Kane summoned Ms. Pence to his pickup truck where the three discussed the proposed sale of one pound of cocaine by the appellant to Pence. Ms. Pence complained about the quality of the one-half ounce of cocaine she had recently purchased from Kane and the appellant told her that this cocaine had come from Mexico and had not come from his supplier's regular source and therefore, was not as good as that which he would be receiving. Pence and the appellant discussed the delivery of a sample of cocaine for testing before completion of the one-pound sale. Appellant told the agent that he had to make a telephone call and that Kane would call her later in the evening. The conversation in the pickup truck was recorded and transcribed and made an exhibit to Ms. Pence's testimony. This second cocaine transaction was never consumated.

Pat Kane testified that he was a former corporal at Tennessee State Penitentiary but lost his job because he had been selling drugs. He agreed to cooperate with the State in return for the arrangement that he serve his confinement in the County Jail instead of the State penitentiary. Kane had been a guard at the penitentiary and believed that the inmates would kill him if he were confined there. Kane had known the appellant since 1969. He had known Tony Bouchard, an ex-police officer, who was serving a sentence in the penitentiary for a drug violation.

Kane testified that in the fall of 1979, the appellant came to him and said, "If we could front Tony (Bouchard) some drugs that he could sell them and make some money." Kane had a conversation with

Bouchard and then brought "a lid" of marijuana from the appellant for $30. Kane sold it to Bouchard for $100. Kane subsequently sold Bouchard 2 more lids of marijuana and 100 Quaaludes, which he had gotten from the appellant.

Kane admitted selling 42 Quaaludes to Ms. Pence at Maple Motors on November 24, 1979. He testified that the appellant had just brought the Quaaludes to him and was still in the building when Ms. Pence arrived. Kane paid the appellant for the Quaaludes immediately after Ms. Pence left.

The 200 Quaaludes sold by Kane to Ms. Pence on December 14, 1979, also came from the appellant, according to Kane. After Ms. Pence had paid Kane, the appellant met Kane at Maple Motors and received his share of the sale price. At the appellant's behest, Kane asked Pence if she was interested in purchasing cocaine. Kane told the appellant of Ms. Pence's interest on December 15, 1979. The next day, the appellant telephoned Kane and gave him the price of $1,050 for one-half ounce of cocaine.

On January 12, 1980, the appellant brought the cocaine to Kane at Maple Motors. Kane sold this to Ms. Pence for $1,150 and she arrested him. After his arrest, Kane took the appellant's money which was owed on the cocaine transaction.

Kane arranged the meeting between Ms. Pence and the appellant and himself. After the meeting, the appellant told Kane that Ms. Pence was too eager to buy and willing to pay too much for drugs. He suspected her of being a police officer. Later, the appellant telephoned Kane and told him that he had learned through investigation that Ms. Pence was a policewoman. He also told Kane that he had "better keep your mouth shut if you know what's good for you."

The appellant testified in his own behalf. He said that Kane was a close friend. Kane told the appellant that Johnny Vaughn was selling drugs and asked the appellant if he knew Vaughn. The appellant answered in the affirmative and he agreed to buy Quaaludes from Vaughn for

Kane. The appellant admitted buying 42 Quaaludes from Vaughn and delivering them to Kane on November 24, 1979. He admitted buying 200 Quaaludes from Vaughn in December, 1980 and delivering them to Kane. He also admits purchasing one-half ounce of cocaine from Vaughn in January, 1980 and delivering it to Kane.

The appellant denied making any profit on the three drug transactions. He testified that he knew that he violated the law but did not think that these were serious violations. He admitted various conversations with the policewoman concerning drugs but stated that his apparent familiarity with the drug business and the discussions of proposed sales was merely "adlibbing."

The appellant insists that the testimony of the accomplice, Kane, was not corroborated. It was corroborated by Ms. Pence's testimony that the appellant was at Maple Motors when the first transaction was consummated and his recorded admission to Ms. Pence when they met in Kane's pickup truck. However, the strongest corroboration is the testimony of the appellant admitting that he had procured drugs for all three transactions and delivered them to Kane. The corroboration of Kane's testimony was substantial.

The appellant also argues that there is no evidence to support a finding that the appellant agreed with Kane to engage in repeated and protracted violations of T.C.A. § 52–1432(a) and (c). In *Randolph v. State*, 570 S.W.2d 869 (Tenn.Cr.App.1978), this court stated:

"... To prove a conspiracy, it is not necessary that the State show a formal agreement between the parties to do the unlawful act, but a mutual implied understanding is sufficient, although not manifested by any formal words, or by a written agreement. The unlawful confederation may be established by circumstantial evidence and the conduct of the parties in the execution of the criminal enterprise. Conspiracy implies concert of design and not participation in every detail of execution."

The direct and circumstantial evidence outlined above is sufficient to support the finding that the appellant and Kane had a mutual understanding to engage in repeated and protracted illicit drug and control substance business.

We also observe that the lack of a conspiracy would not absolve the appellant. As above stated, this offense might be committed by an individual engaging in the business as a sole proprietor; it is not necessary that the business transaction be by a combination of persons engaged in a conspiracy. The State's proof established, and the defendant admitted that he made three separate deliveries of Schedule II controlled substances on separate days. The evidence meets the standard fixed by Rule 13(e), T.R.A.P. We overrule the issues attacking the sufficiency of the evidence.

The appellant next complains that the trial judge erred in admitting in evidence the transcript of the conversation on January 16, 1980 among the appellant, Kane and Pence. The appellant argues that Kane's previous arrest had terminated the conspiracy and the evidence was not admissible because the conversation was not in furtherance of the conspiracy. Whether or not the conspiracy had terminated, the evidence was admissible. It was relevant because statements made by the appellant during the conversation tended to show that he had been engaged in the drug business with Kane for profit; it refuted his testimony that he merely made the three purchases as a favor to Kane, and that he only purchased cocaine from his supplier on the one occasion in January, 1980. The evidence corroborated Kane's testimony concerning the business relationship between the appellant and Kane and tended to establish a conspiracy.

In the same context, the appellant complains that the evidence of the previous drug transactions involving Tony Bouchard at the State penitentiary is not admissible. As stated, it was relevant for the State to prove a conspiracy. It was the State's theory that the appellant and Kane first entered into their criminal enterprise to distribute drugs in the State penitentiary. We quote from 15A C.J.S. *Conspiracy*, § 92, beginning on page 897:

"The prosecutor has the right to show the whole history of the conspiracy from the commencement to its conclusion. It is no objection that the evidence covers a great many transactions and extends over a long period of time, that it may show another crime, that the acts, evidence to show which is offered, occurred some time before the alleged formation of the conspiracy, or that such acts or transactions occurred some time after its termination, provided, however, that the facts shown have some bearing on and tendency to prove the ultimate fact at issue." (footnotes omitted.)

We hold that the evidence of the relationship between the appellant and Kane involving the drug transactions at the State penitentiary was admissible as evidence that Kane and the appellant entered into a continuing conspiracy at that time, to engage in the illicit drug trade.

Finally, the appellant says that the trial judge erred in not instructing the jury with regard to the general conspiracy statute, T.C.A. § 39–1101. The indictment sets forth all of the elements of conspiracy as that offense is defined in T.C.A. § 39–1101. Therefore, the offense of conspiracy is an included offense. *Howard v. State*, 578 S.W.2d 83 (Tenn.1979). However, error was not committed in failing to charge § 39–1101. As above pointed out, T.C.A. § 52–1432(d) proscribes the protracted and repeated engagement in the illicit drug business by members of a conspiracy. In the case of a conspiracy, a member is a party to every act which has been done by the other conspirators. The act of any party to a conspiracy is an act of all. *Owens v. State*, 84 Tenn. 1 (1885); *Strady v. State*, 45 Tenn. 300 (Tenn.1868); *Randolph v. State*, *supra*. However, as previously discussed, the statute also proscribes this activity by one acting alone and not as a conspirator.

The indictment charges that the appellant personally delivered to Kane 42 Quaa-

lude tablets on one occasion and 200 Quaalude tablets on another day. It also charges that the appellant personally delivered one-half ounce of cocaine to Kane on yet another day. The appellant made a judicial admission in his testimony that he personally made these three deliveries. There was abundant evidence that three more sales were made by the co-conspirator. In view of this evidence, reasonable minds could not have found that the appellant was guilty only of the included offense of general conspiracy. The trial judge correctly refused to instruct the jury with regard to general conspiracy. *Johnson v. State*, 531 S.W.2d 558 (Tenn.1975).

All issues are resolved in favor of the State and the judgment below is affirmed.

O'BRIEN and DUNCAN, JJ., concur.

## OPINION ON PETITION TO REHEAR

TATUM, Judge.

Robert Cole has filed a petition to rehear in which he states that the habitual drug offender statute is unconstitutional as applied in this case. He states that he was denied fundamental fairness and due process because he was charged with being a conspirator with Pat Kane and because he was charged also with acting individually in three drug transactions. Cole says that the presentment and evidence affected his "substantive rights in preventing him from presenting his defense properly." We do not agree. Though the indictment and the State's evidence might have affected the conduct of the appellant in his defense and might have influenced his decision to testify on his own behalf, these matters did not violate any right of the appellant. We do not find that the habitual drug offender statute is unconstitutional as applied in this case. The petition to rehear is denied.

O'BRIEN and DUNCAN, JJ., concur.