**STATE of Tennessee, Plaintiff-Appellee,**

v.

**Ernest HINSLEY, Defendant-Appellant.**

Supreme Court of Tennessee.

Feb. 5, 1982.

James R. Omer, Nashville, for defendant-appellant.

John C. Zimmermann, Asst. Atty. Gen., Nashville, for plaintiff-appellee; William M. Leech, Jr., Atty. Gen., Nashville, of counsel.

## OPINION

BROCK, Justice.

The sole issue presented is the constitutionality of T.C.A., § 52–1432(d).[1]

---

1. T.C.A., § 52–1432:

 \* \* \* \* \* \*

"(d)(1) It shall be unlawful and shall constitute a Class X felony for a person to be engaged as a habitual drug offender. As used in this subsection, a 'habitual drug offender' is defined as one who engages in the protracted and repeated manufacturing, delivering, selling, processing with intent to manufacture, deliver or sell or conspiring

The facts are undisputed. Ernest Hinsley made three sales of controlled substances within one month to an undercover officer of the Davidson County Police Department. The first sale was of hydromorphone on March 22, the second was of heroin hydrochloride on March 26, and the third was of diacetylmorphine on March 28, 1980.

Hinsley was indicted for the offense of being engaged as an habitual drug offender. The defendant moved to dismiss the indictment on the grounds that T.C.A., § 52–1432(d), was in violation of the State and Federal Constitutions, but this motion was denied. An application for interlocutory appeal was denied by this Court on April 7, 1981. In July, 1981, the defendant was convicted in accordance with his plea of guilty to count 4 of the indictment, which alleged that he had been engaged as an habitual drug offender. On August 3, 1981, the defendant was sentenced to a ten year term in the State penitentiary. The defendant reserved the right to appeal the constitutionality of the habitual drug offender statute.

The habitual drug offender law was enacted in 1979 in an effort to fill a void in existing drug control legislation. T.C.A., § 52–1432(d), is one of a total of four parts of a comprehensive drug control law. T.C.A., § 52–1432(a), deals with single sale violations; T.C.A., § 52–1434, entitled "Criminal penalties—Second offense defined," deals with the repeat offender and constitutes our enhanced punishment statute; T.C.A., § 52–1432(c), addresses the sale of a large quantity of narcotics; and, T.C.A., § 52–1432(d), is aimed at the dope dealer, one who engages in protracted and repeated sales of narcotics. This legislative scheme is unique to Tennessee.[2] The goal of the Act is to attack those involved in the multiple sales of drugs—"the pushers."

T.C.A., § 52–1432, is not an enhancement of punishment statute,[3] it creates an offense. It provides that a person who makes three sales of Schedule I, II, or III controlled substances or who makes five sales of controlled substances set out in Schedules I through VI shall be treated as a repeat seller and is guilty of the offense created by this law. This punishment

with another with intent to manufacture, deliver or sell or possess with intent to manufacture, deliver or sell any controlled substance under any schedule or combination of schedules, unless a person is otherwise permitted by law to engage in one or more of the activities included herein.

"(2) To convict a person under the provisions of this subsection, the state must prove as elements of the offense:

"(A) Three or more violations of subsections (a) or (c) occurring at least one day apart for at least three of the violations and that three or more violations involve either schedule I, II or III controlled substances or combinations thereof, or

"(B) Five or more violations of subsections (a) or (c) occurring at least one day apart for at least five of the violations and that five or more violations involve either schedule I, II, III, IV, V or VI controlled substances or any combinations thereof.

"(3) The indictment for a violation of this subsection shall charge that the defendant is a habitual drug offender, and the separate transactions shall be listed as overt acts within the same count. Nothing herein shall prohibit additional counts charging the overt acts as separate and additional offenses; provided, that the jury shall find the defendant

guilty of either one or more overt acts as separate offenses or as a habitual drug offender but not both. The state shall not be required to elect submission to the jury of the several counts.

"(4) A violation of this subsection shall constitute a Class X felony and shall be punishable by a determinate sentence of not less than ten (10) years nor more than life in the state penitentiary and in addition thereto may be fined not more than two hundred thousand dollars ($200,000).

"(e) The trial court may enter such injunctions, restraining orders, directions or prohibitions, or take such other actions, including the acceptance of satisfactory performance bonds, for the purpose of collecting any fine imposed pursuant to this section."

2. This Act is, however, similar to the Federal RICO legislation which has multiple offender provisions for related incidents. 18 U.S.C. § 1961 *et seq.* The prosecutor must prove a *pattern* of racketeering activity which requires at least two criminal acts. *See also* 21 U.S.C. § 848 which provides enhanced punishment for continuing criminal enterprise.

3. *Cf.* Chapter 28 Habitual Criminals T.C.A., § 40–2801 through 40–2807.

scheme parallels other portions of the drug laws in that the penalties reflect a priority classification based on the degree of danger of the drug. To safeguard against the possibility of convicting an individual as an habitual drug offender because of a single criminal episode, T.C.A., § 52–1432(d)(2), provides that the violations must occur at least a day apart. The statute provides a minimum sentence of ten years with a maximum sentence of life imprisonment.

One of the defendant's major arguments is that the habitual drug offender act does not require previous *convictions* of drug sales in order to support an habitual drug offender conviction. But there is no constitutional requirement that this Act follow the format of the Habitual Criminal Act, T.C.A., § 40–2801 et seq. This Act clearly creates a separate and independent substantive crime, viz., one shall not be engaged as an habitual drug offender, as defined. The State must prove beyond a reasonable doubt that the defendant committed three or five independent overt sales, each occurring more than a day apart. The elements of the crime are clearly enumerated in the statute and the penalty is prescribed.

The defendant alleges that the habitual drug offender statute subjects the offender to double jeopardy. Under the statute, the State is permitted to allege, as separate offenses, the sales which also constitute the overt acts essential to the separate and independent crime of being engaged as an habitual drug offender. The statute provides, however, that the jury must not convict the defendant of both committing the individual crimes and of being an habitual drug offender. This prohibition cures any possible double jeopardy defects.

The defendant asserts that the definition of the offense of engaging as an habitual drug offender is so vague that it violates the requirements of the due process clause. It is a basic principle of due process that an enactment will be declared void for vagueness if its prohibitions are not clearly defined. *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972). The fair warning requirement embodied in the due process clause prohibits the state from holding an individual criminally responsible for conduct which he could not reasonably understand to be proscribed. *United States v. Harriss*, 347 U.S. 612, 617, 74 S.Ct. 808, 812, 98 L.Ed. 989 (1964).

The words of a statute are to be taken in their natural and ordinary sense without a forced construction to limit or extend their meaning. *Ellenburg v. State*, 215 Tenn. 153, 156, 384 S.W.2d 29, 30 (1964). A statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess as to its meaning and differ as to its application denies due process of law. *Cramp v. Board of Public Instruction*, 368 U.S. 278, 82 S.Ct. 275, 7 L.Ed.2d 285 (1961); *United States v. Spector*, 343 U.S. 169, 72 S.Ct. 591, 96 L.Ed. 863 (1952). The words of this statute are sufficiently precise to put an individual on reasonable notice concerning the conduct that is prohibited, and the language sets out boundaries sufficiently distinct for the courts to fairly administer the law.

The defendant further asserts that this statute is void for vagueness because it encourages arbitrary and erratic arrests and convictions. *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972). In *Papachristou* the court declared a Florida vagrancy ordinance unconstitutional because it allowed the police an unfettered option to arrest an offender. The statute allowed police to arrest suspicious looking persons without probable cause. However, T.C.A., § 52–1432(d), does not provide a scheme which permits or encourages an arbitrary and discriminatory enforcement of the law. It clearly provides standards for the police to follow. The defendant complains that the statute encourages police officers to forego arresting an accused after the first or second drug violation in order to amass sufficient evidence to prosecute the drug offender under the habitual drug of-

fender act. There is, however, no constitutional right to be arrested. *Hoffa v. United States*, 385 U.S. 293, 310, 87 S.Ct. 408, 417, 17 L.Ed.2d 374, 386 (1966). In *Hoffa*, the court noted that law enforcement officers are under no constitutional duty to call to a halt a criminal investigation the moment they have the minimum evidence. Especially in a drug distribution case, it is essential that the law enforcement officers weave their way past the street peddlers in order to learn the identities of the major drug suppliers. It is essential that undercover agents deal with those who are likely to repeatedly distribute the drugs in order to gain their confidence and thereby find their way to the center of the drug supply network. The defense of entrapment is available to the defendant who wishes to claim that he was duped into violating the law. *State v. Jones*, Tenn., 598 S.W.2d 209 (1980).

The defendant further contends that the statute is void because it fails to furnish adequate guidance to the court in trying those who are accused of violating T.C.A., § 52–1432(d). As discussed above, however, the statute clearly delineates the overt acts that must be proven and what the consequences of the criminal activity will be.

 The defendant claims that the statute violates his rights to equal protection of the law by creating an unwarranted disparity of treatment between major and minor drug traffickers by permitting police officers to exercise excessive discretion in initiating adversary criminal proceedings against an accused. The legislature may distinguish among the ills of society which require a criminal sanction, and may punish them appropriately without violating constitutional limitations. The legislature, in the instant case, has determined that the protection of the public against major drug dealers and those who engage in persistent and repeated drug sales, constitutes the core of the drug problem which besets our society. The legislature has seen fit to punish more severely drug dealers whose conduct causes a more serious threat to our society than those individuals who are only users. The classification of an habitual drug offender within the crimes requiring mandatory imprisonment is neither arbitrary nor capricious. The legislature has broad police power to regulate drug traffic. The legislature was within its bounds when it classified the deterrence of drug traffic as a legitimate governmental interest. There is clearly a rational relationship between the provisions of the habitual drug offender act and the legitimate governmental interest of deterrence of drug sales. This argument is without merit.

 The defendant asserts that the sentencing provisions of the habitual drug offender act constitute cruel and unusual punishment and are violative of the Eighth Amendment of the Constitution of the United States. A statute imposing a mandatory sentence for narcotics offenses does not inflict cruel and unusual punishment; a prison term is an ordinary and constitutionally defensible mode of punishment for repeatedly selling controlled substances. The Act provides for a determinate sentence of not less than ten years nor more than life imprisonment in the State penitentiary and, in addition, a fine of up to $200,000. In *Rummel v. Estelle*, 445 U.S. 236, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980), the defendant had been sentenced to life imprisonment under a Texas sentence enhancement statute which was triggered by the defendant's three prior convictions, each of which were for minor property offenses. The court rejected the defendant's Eighth Amendment attack upon his life sentence and concluded that the sentencing scheme was a matter largely within the discretion of the punishing jurisdiction. 445 U.S. at 285, 100 S.Ct. at 1145. By analogy to *Rummel*, the provisions of T.C.A., § 52–1432(d)(4) are constitutional.

In *Pearson v. State*, Tenn., 521 S.W.2d 225 (1975), this Court ruled that the habitual criminal act is not unconstitutional as inflicting cruel and unusual punishment in violation of the Eighth Amendment to the Constitution of the United States. In addition, in *Gaskin v. State*, Tenn., 490 S.W.2d

521 (1973), appeal dismissed 414 U.S. 886, 94 S.Ct. 221, 38 L.Ed.2d 133 (1973), the statutory sentences providing punishment for the manufacture and possession of marijuana were not held to be cruel and unusual. The punishment provided by this Act is neither cruel nor unusual.

■ The defendant further asserts that the habitual drug offender act is unconstitutional because it fails to provide for a bifurcated hearing. The United States Supreme Court has held that there is no constitutional right to a bifurcated trial even in those situations where the defendant must defend, in a single hearing, sentence enhancement provisions of an habitual criminal statute. *Spencer v. Texas*, 385 U.S. 554, 568, 87 S.Ct. 648, 656, 17 L.Ed.2d 606, 616–17 (1967). In *McGautha v. California*, 402 U.S. 183, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971), it was noted that although bifurcated trials and criteria for jury sentencing discretion are superior means of dealing with capital cases, the Federal Constitution does not guarantee such trial procedures in capital cases. The constitution requires that trials be fairly conducted and that guaranteed rights of defendants be scrupulously respected. *Id.* at 221, 91 S.Ct. 1454, 28 L.Ed.2d 711. If a bifurcated trial is not required in a capital case, the lack of a bifurcated trial when the maximum penalty involved is life imprisonment clearly does not violate a constitutionally protected right.

The defendant appears to rely upon *Hardy v. State*, Tenn.Cr.App., 519 S.W.2d 400 (1975), in which a defendant sold a small quantity of heroin to an undercover agent followed by a second sale of a small quantity of heroin the following day to a different undercover agent. The court held that evidence of one sale would not be admissible in the trial for conviction of the other. That case has no application here; in the instant case, the defendant is not being tried for an isolated sale. The crime with which he is charged is that of being a repeated and protracted drug seller. In order to convict a party of such a crime, at least three separate and overt violations must be shown. No bifurcation is necessary.

For the foregoing reasons, we conclude that T.C.A., § 52–1432(d), is constitutional. Costs incurred upon appeal are taxed against the defendant.

HARBISON, C.J., and FONES, COOPER and DROWOTA, JJ., concur.