IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
September 10, 2002 Session

## STATE OF TENNESSEE v. ARTEZ L. MOREIS

**Appeal from the Criminal Court for Shelby County**
**No. 99-11512      Arthur T. Bennett, Judge**

_____

**No. W2002-00474-CCA-R3-CD - Filed April 2, 2003**

_____

The defendant, Artez L. Moreis, appeals as of right his convictions by a Shelby County Criminal Court jury for sale of cocaine, possession of cocaine with intent to sell, and possession of cocaine with intent to deliver, all Class C felonies. The trial court sentenced him as a career offender to three concurrent, fifteen-year sentences to be served in the Department of Correction. He contends that (1) the evidence is insufficient to support his convictions, (2) his three convictions stemming from a single drug transaction violate double jeopardy, (3) his prior felony drug convictions were inadmissible to impeach him, (4) the jury instructions should have included the lesser included offense of facilitation of the sale of cocaine and improperly defined knowingly, and (5) his sentence constitutes cruel and unusual punishment and should be served on community corrections. We reverse the defendant's convictions because his prior felony drug convictions were inadmissible and remand the case for a new trial.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Reversed;**
**Case Remanded**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which JOE G. RILEY, J., joined. DAVID G. HAYES, J., filed a dissenting opinion.

C. Michael Robbins and William D. Massey, Memphis, Tennessee, and Paul N. Royal and Lorna S. McClusky, Memphis, Tennessee (at trial), for the appellant, Artez L. Moreis.

Paul G. Summers, Attorney General and Reporter; Braden H. Boucek, Assistant Attorney General, William L. Gibbons, District Attorney General; and Teresa S. McCusker and Lee V. Coffee, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

This case arises out of the June 11, 1999 controlled purchase of crack cocaine outside the Peppertree Apartments in Memphis, Tennessee. Sergeant Eddie Bass of the Memphis Police Department (MPD) testified that in response to a complaint that some African-American males were

selling drugs in the breezeway, he participated in a drug transaction at 4262 Eastwind Street on June 11, 1999, just before 5:50 p.m. He said the Peppertree Apartments contained 300 to 400 apartments and that the breezeway ran between buildings 4252 and 4262. He said that the apartment doors were located on the front and back of the buildings. He said that the defendant and an African-American male named Darrell Jackson were standing in front of the breezeway and that no one else was around.

Sergeant Bass testified that he approached Jackson and that the defendant stepped back but remained in the breezeway. He said he asked Jackson if he could buy crack cocaine, and Jackson asked him how many rocks he needed. He said he told Jackson he wanted to sample one rock and gave Jackson a marked twenty-dollar bill. He said Jackson told him to wait because he had to "go to his man." Sergeant Bass said Jackson went to the defendant, who was standing about five yards behind Jackson. He said the defendant and Jackson spoke, and Jackson gave the defendant the twenty-dollar bill. He said that the defendant placed something from his closed fist into Jackson's hand and that Jackson brought the item to Sergeant Bass, saying it was crack cocaine. He said he was about ten yards away and had a side view of Jackson and the defendant during the exchange. He said about ten to fifteen seconds elapsed between the hand-to-hand exchange and Jackson returning to give him the cocaine. He said he left the area and gave the signal for other officers to arrest the defendant and Jackson. He said the substance Jackson handed him field-tested positive for cocaine.

On cross-examination, Sergeant Bass admitted that he had not received descriptions of the African-American males involved in the drug sales. He said he could not see what was in the defendant's closed fist, but he did see a hand-to-hand exchange between the defendant and Jackson.

MPD Officer Michael Hardy testified that he watched the drug transaction on June 11, 1999, from an adjacent parking lot about twenty-five yards away. He said Sergeant Bass walked over to a group of African-American males who were standing in a breezeway. He said Sergeant Bass talked with Darrell Jackson and gave him twenty dollars. He said Jackson went to the defendant, made an exchange, returned to Sergeant Bass, and gave Sergeant Bass the crack cocaine. He said thirty seconds elapsed between Jackson making the exchange with the defendant and returning to Sergeant Bass. He said when Sergeant Bass started walking back to his car, Sergeant Bass gave the signal. He said he and two other officers arrested the defendant and Jackson. He said he searched the defendant and recovered $130, which included the marked twenty-dollar bill, from the defendant's right front pants pocket.

On cross-examination, Officer Hardy testified that the transaction occurred toward the front of the breezeway in the early evening and that not many people were around. He said Jackson stepped away from the group of African-American males and met Sergeant Bass. He said that although he saw a hand-to-hand exchange between Jackson and the defendant, he could not tell what, if anything, the defendant gave to Jackson. He said the defendant did not try to run or fight when he was arrested. He said that after the officers arrested the defendant and Jackson, a lot of people came outside.

MPD Officer Jeff Simcox testified that the rock of crack cocaine weighed .2 grams. Dr. Freda Saharovici testified as an expert in forensic toxicology that the substance was or contained cocaine in its freebase form.

Sheila Renee Roberson, a friend of the defendant, testified that she lived in the Peppertree Apartments. She said that on the afternoon of June 11, 1999, she was visiting Thelma Heard, a man who lived on the back of the apartment building about two or three steps from the breezeway. She said that the defendant came to Mr. Heard's apartment looking for her and that they remained there for another thirty to forty-five minutes. She said she and the defendant decided to go to a nearby store to get some beer. She said as they left the apartment, they turned right toward the store and away from the breezeway. She said that two or three seconds later, Darrell Jackson, whom she had never seen before, approached the defendant and asked him where he was going. She said Jackson appeared to know the defendant and called him by name. She said the defendant told Jackson he was going to the store to get some beer. She said Jackson offered to pay for the beer and immediately gave the defendant a twenty-dollar bill. She said that as they turned toward the store, fifteen to twenty police officers came from numerous directions and overpowered the defendant, throwing him to the ground. She said that the defendant was never out of her sight after they left the apartment and that she did not see the defendant give Jackson anything. She said that a lot of people were outside that afternoon and that her daughter Ragan was sitting on the steps that led to the breezeway.

Ragan Roberson, Ms. Roberson's daughter, testified that she was twenty-one years old and lived in the Peppertree apartments near her mother. She said that on the afternoon of June 11, 1999, she was sitting on the steps that led to the breezeway. She said she saw her mother and the defendant come out of Mr. Heard's apartment together and turn right toward the store. She said a man whom she did not know had been lingering around the breezeway. She said that as the defendant left Mr. Heard's apartment, the man called the defendant's name and asked what the defendant was about to do. She said the defendant replied that they were going to the store to get beer. She said the man said he would pay for the beer and handed the defendant some money. She said the police came and placed the defendant on the ground. She said the defendant did not fight or react to the police. She said that she was about two feet from the defendant and that a lot of people were outside during the incident.

## I. SUFFICIENCY OF THE EVIDENCE

The defendant contends that the evidence is insufficient to support his convictions because the circumstantial evidence does not exclude every reasonable hypothesis except his guilt. He argues that the evidence equally supports two inferences: (1) that he gave Darrell Jackson the crack cocaine and (2) that Jackson already had the crack cocaine and only gave him $20 to buy beer. The state contends that the evidence is sufficient. We agree with the state.

Our standard of review when the sufficiency of the evidence is questioned on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson

v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). We do not reweigh the evidence but presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Any questions about the credibility of the witnesses were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).

Tennessee law prohibits a person from knowingly selling cocaine or possessing cocaine with the intent to sell or deliver it. Tenn. Code Ann. § 39-17-417(a)(3)-(4); see Tenn. Code Ann. § 39-17-408(b)(4). Viewing the evidence in the light most favorable to the state, Sergeant Bass gave a marked twenty-dollar bill to Darrell Jackson and asked for a rock of crack cocaine. Jackson told Sergeant Bass that he would have to go to his man, then went directly to the defendant. Sergeant Bass saw Jackson speak with the defendant and give the defendant the twenty-dollar bill. Sheila and Ragan Roberson testified that Jackson handed the defendant money. Both Sergeant Bass and Officer Hardy saw the defendant pass something to Jackson, who returned immediately to Sergeant Bass and handed him a rock of crack cocaine. Officer Hardy arrested the defendant within minutes of the drug transaction and found the marked twenty-dollar bill in the defendant's right front pants pocket. The evidence is sufficient to support the defendant's convictions for sale of cocaine and possession of cocaine with intent to sell or deliver.

The defendant contends that it is equally plausible that Darrell Jackson wanted some beer and gave the defendant the twenty dollars to buy it, perhaps even telling defendant that he had just sold crack cocaine to Sergeant Bass. Thus, he argues that the evidence does not exclude every reasonable hypothesis save that of his guilt. In order for circumstantial evidence alone to warrant a criminal conviction, the evidence must be not only consistent with the guilt of the accused but also inconsistent with his innocence and must exclude every other reasonable theory or hypothesis except that of guilt. Pruitt v. State, 3 Tenn. Crim. App. 256, 267, 460 S.W.2d 385, 390 (1970). Initially, we note that the present convictions do not rest solely upon circumstantial evidence but are supported by the eyewitness testimony of Sergeant Bass and Officer Hardy. See State v. Coulter, 67 S.W.3d 3, 69 (Tenn. Crim. App. 2001) (observing that if the state presented direct evidence of the defendant's guilt, then the direct and circumstantial proof need not exclude every reasonable hypothesis of innocence). Furthermore, neither Sheila nor Ragan Roberson testified that Jackson told the defendant of the drug transaction with Sergeant Bass. Additionally, both said Jackson gave the defendant the money to pay for the beer that the defendant had announced he was getting. This weakens the plausibility of the defendant's inference. In any event, the jury was presented with the defendant's theory that Jackson gave him the twenty-dollar bill to pay for beer rather than in exchange for a rock of crack cocaine. As is its prerogative, the jury chose to accredit the state's witnesses who testified that the defendant handed something to Jackson and the inference that the item was crack cocaine, which flowed from Jackson, in turn, immediately giving a crack rock to Sergeant Bass. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987) (holding that the credibility of the witnesses and the weight to be given to their testimony are issues to be resolved by the trier of fact). The evidence is sufficient.

## II.  DOUBLE JEOPARDY

In a related matter, the defendant contends that his three convictions arising from the sale of the same piece of crack cocaine violate the federal and state protections against double jeopardy. See U.S. Const. amend. V; Tenn. Const. art. I, § 10 (providing that no one shall be twice put in jeopardy of life or limb for the same offense).  He argues that his judgments of conviction for possession of cocaine with intent to sell and possession of cocaine with intent to deliver, counts two and three, should be vacated and the charges dismissed.  The state concedes and the defendant is correct that these three convictions based upon a single drug sale involving the same controlled substance violate double jeopardy.  State v. Johnson, 765 S.W.2d 780, 782 (Tenn. Crim. App. 1988) (holding that double jeopardy bars convictions for both possession with intent to deliver and possession with intent to sell based upon the same evidence); State v. Williams, 623 S.W.2d 121, 125 (Tenn. Crim. App. 1981) (holding that double jeopardy prohibits convictions for possession with intent to sell and for selling the same controlled substance).

We decline, though, to require the dismissal of counts two and three.  The state may charge different means of conducting the same drug transaction in anticipation of the uncertainty of the evidence.  See State v. Beard, 818 S.W.2d 376, 378 (Tenn. Crim. App. 1991).  In order to preserve the jury's findings with regard to each count, the trial court should have merged the three convictions into a single conviction.  See, e.g., State v. Howard, 30 S.W.3d 271, 274 n.4 (Tenn. 2000) (noting that a court may avoid a double jeopardy violation by merging offenses and imposing a single conviction when the jury finds the defendant guilty of multiple counts of same crime).  If the retrial of this case results in convictions on all three counts, the trial court should merge the three convictions into one.

## III.  ADMISSIBILITY OF PRIOR CONVICTIONS

The defendant contends that the trial court erroneously ruled that his prior felony drug convictions were admissible under Rule 609, Tenn. R. Evid., to impeach him should he testify.  He argues that the prior convictions are not probative of dishonesty and that the prejudice arising from their similarity to the present offenses greatly outweighs any probative value they possess.  The state contends that the defendant's prior convictions are highly probative of his credibility and properly admissible under Rule 609.  It also argues that any error arising from the trial court's ruling was harmless as the defendant's intended testimony would have been cumulative to that of defense witnesses Sheila and Ragan Roberson.  We hold that the trial court committed reversible error in ruling that the prior convictions were admissible.

Before trial, the state gave written notice that it intended to use the defendant's five 1994 convictions for unlawful possession of a controlled substance with intent to sell and his 1996

conviction for manufacturing, selling, or delivering a controlled substance[1] to impeach him should he testify at trial. The defendant objected to the admissibility of these felony convictions just before trial and again at the close of the state's proof, arguing that the prejudicial effect of the prior convictions outweighed their probative value because they were identical to the present offenses. The trial court noted that appellate case law states that drug convictions, like theft convictions, reflect on a defendant's credibility. It ruled that although the admission of any prior conviction is prejudicial, the defendant's prior convictions were very probative because the state had the right to test the defendant's credibility regarding his position that he was not involved in a drug transaction. The defendant then testified out of the presence of the jury that he had decided not to testify at trial based upon the court's ruling that the state could use his prior criminal record against him.

At the hearing on the defendant's motion for a new trial, the defendant gave the following proffer of his testimony: On June 11, 1999, he was at the Peppertree Apartments visiting some friends and former neighbors. While visiting Shelia Roberson, he decided to buy some beer, and Ms. Roberson went with him toward the store, which was about one hundred yards away. They were by a breezeway halfway between the apartment and the store when Darrell Jackson, whom he had known for awhile, stepped out of the breezeway and called him back. Jackson told the defendant that he had just gotten out of jail and asked where the defendant was going. The defendant told Jackson he was on his way to the store to get beer. Jackson asked the defendant to buy Jackson some beer because Jackson did not have any identification. He told the defendant to buy enough beer for both of them and that they could drink the beer together. Jackson gave the defendant a twenty-dollar bill, and the defendant told Jackson he would return. As the defendant went toward the store, police officers came from everywhere and arrested him. He denied selling crack cocaine to Jackson or anyone that day. On cross-examination, he agreed that the jury heard this account from Sheila and Ragan Roberson. He said that he had no agreement with Jackson to sell cocaine and that he did not give cocaine to Jackson.

Rule 609 permits the state to impeach a defendant with his or her prior convictions if certain conditions are met: The prior conviction must be for a felony or for a misdemeanor involving "dishonesty or false statement." Tenn. R. Evid. 609(a)(2); State v. Mixon, 983 S.W.2d 661, 674 (Tenn. 1999). Less than ten years must have elapsed between the defendant's release from confinement for the prior conviction and the commencing of the prosecution. Tenn. R. Evid. 609(b). Additionally, the state must give reasonable pretrial notice of the impeaching convictions. Tenn. R. Evid. 609(a)(3). Finally, the trial court must find that the impeaching conviction's probative value on credibility outweighs its unfair prejudicial effect on the substantive issues. Tenn. R. Evid. 609(a)(3). It is this final condition that is at issue in this case. The trial court's decision to admit a prior conviction under Rule 609 will not be reversed on appeal unless the trial court abused its discretion. State v. Blanton, 926 S.W.2d 953, 960 (Tenn. Crim. App. 1996).

---

[1]We note that proof presented at the sentencing hearing reveals that the defendant had the following felony convictions: a January 11, 1994 conviction for possession of cocaine with intent to sell; four March 8, 1994 convictions for sale of cocaine; and one August 6, 1996 conviction for sale of cocaine.

Initially, we note that Tennessee's Rule 609 is derived from its federal counterpart. See Tenn. R. Evid. 609, Advisory Commission Comments. In State v. Morgan, 541 S.W.2d 385, 388-89 (Tenn. 1976), our supreme court adopted the federal Rule 609(a)-(b), Fed. R. Evid., which allows the state to impeach a criminal defendant with two categories of prior convictions: (1) felonies if the probative value of the conviction outweighed its unfair prejudicial effect and (2) crimes involving dishonesty or false statement. See Tenn. R. Evid. 609, Advisory Commission Comments. The latter category does not require the trial court to weigh probative value of the prior conviction against its prejudicial effect. Fed. R. Evid. 609(a)(2); see Morgan, 541 S.W.2d at 389. Effective January 1, 1990, our legislature enacted Tennessee Rule 609, Tenn. R. Evid., which requires the trial court to balance the prior conviction's probative value against its prejudicial effect for all of a defendant's prior convictions. Despite this departure from the federal rule, dishonesty remains important to the prior felonies category as a practical matter because in the balancing process, crimes suggesting dishonesty are more probative of credibility. See Mixon, 983 S.W.2d at 674. The more dishonest the crime, the more probative it is of credibility. See id.

With respect to the probative value of his prior convictions, the defendant contends that prior drug-related felonies do not reflect dishonesty or false statement, citing this court's decision in State v. Walker, 29 S.W.3d 885, 890-91 (Tenn. Crim. App. 1999). See also State v. Leon Hurd, No. E1999-01341-CCA-R3-CD, Anderson County, slip op. at 16 (Tenn. Crim. App. Apr. 10, 2001). The state relies upon a trio of unpublished cases to argue that because persons involved in the drug trade are unregulated and take measures not to be caught, drug convictions are probative of dishonesty. See State v. Vernon Dewayne Waller, No. M2001-02414-CCA-R3-CD, Davidson County, slip op. at 4 (Tenn. Crim. App. Aug. 23, 2002), app. granted (Tenn. Dec. 23, 2002); State v. Christopher Knighton, No. E2000-00746-CCA-R3-CD, Blount County, slip op. at 8 (Tenn. Crim. App. Feb. 15, 2001); State v. Brian Roberson, No. 01C01-9801-CC-00043, Williamson County, slip op. at 12-13 (Tenn. Crim. App. Dec. 21, 1998), app. denied (Tenn. May 13, 1999). We hold that this issue has already been resolved in Walker, which remains the controlling precedent. See Tenn. S. Ct. R. 4(H)(2) (providing that published opinions "shall be considered controlling authority for all purposes unless and until such opinion is reversed or modified by a court of competent jurisdiction").

In Walker, we held that neither the desire to evade detection nor the environment surrounding the crime reveal the dishonesty contemplated by Rule 609(a)(2): "Relative to Roberson, we question whether we can assume that the defendant's previous sales of cocaine for which he was convicted involved money laundering, tax evasion, or other so-called deceitful conduct." 29 S.W.3d at 891. The recent cases of Knighton and Waller expand upon the Roberson reasoning by adding that persons who engage in the profitable enterprise of drug dealing are frequently addicted to drugs and often commit other crimes in order to fund their drug habit. Vernon Dewayne Waller, slip op. at 4; Christopher Knighton, slip op. at 8. We also question whether we can assume such circumstances from the fact that a defendant has prior drug-related convictions. Furthermore, "almost all crimes are committed with the intention of not being caught." Walker, 29 S.W.3d at 891. In looking to the evidence relating to the elements of the crime rather than the circumstances or environment surrounding it, we concluded in Walker that "the mere fact of the sale of cocaine is not as probative of the defendant's credibility as would be an offense involving dishonesty or false statement." Id.

We remain convinced that the desire not to be caught does not, by itself, transform drug-related offenses into crimes of dishonesty.

In the present case, the fact that the defendant had six prior convictions relating to the sale of cocaine greatly increases the potential for the jury to decide that the defendant acted in the same way on June 11, 1999, i.e., he sold cocaine. See id. (holding that the defendant's five prior drug-related convictions had an extremely prejudicial effect on the substantive issues in his trial for sale of cocaine); see, e.g., State v. Luellen, 867 S.W.2d 736, 741 (Tenn. Crim. App. 1992) (reversing felonious cocaine possession convictions due to state's use of the defendants' two prior cocaine possessions and one marijuana possession as evidence). Thus, the unfair prejudicial effect of the defendant's prior convictions on the substantive issues in the trial of his present charges is great. Under Walker, we conclude that the trial court abused its discretion in ruling that the defendant could be impeached with his six prior felony convictions.

The state argues that the error was harmless because the jury heard the evidence to which the defendant would have testified from defense witnesses Sheila and Ragan Roberson. We disagree. The defendant's theory–that he was not involved in the sale of crack cocaine but merely accepted twenty dollars from Darrell Jackson in order to buy beer–placed his credibility directly at issue. Although the jury heard that Jackson gave the defendant the twenty-dollar bill for beer, Sheila Roberson testified that Jackson inexplicably approached them and wanted to pay for the defendant's beer. The jury was not apprised of the defendant's explanation that Jackson asked the defendant to buy beer for the two of them to drink together because Jackson did not have identification. Nor did they hear the defendant's complete denial of his involvement in the drug transaction. Because the evidence connecting the defendant to the drug transaction was not overwhelming and the defendant's credibility was critical to the case, we conclude that the trial court committed reversible error in ruling the defendant's prior felony drug convictions to be admissible.

## IV.  JURY INSTRUCTIONS

The defendant contends that the trial court should have instructed the jury on facilitation of the sale of cocaine as a lesser included offense of the sale of cocaine. The state contends that the evidence does not support an instruction on facilitation. The defendant also argues that the trial court committed plain error by improperly defining the term knowingly for the jury. He asserts that the improper instruction on knowing lessened the state's burden of proof and was not harmless beyond a reasonable doubt. The state contends that the trial court effectively heightened the state's burden by requiring the jury to consider all three definitions of knowing. It also argues that the instruction on all three definitions was harmless because the defendant's mental state was not an issue at trial. We hold that the trial court did not err in declining to instruct the jury on facilitation of the sale of cocaine because the evidence did not support the instruction. Additionally, we believe that the instruction on all three definitions of knowingly is not plain error.

## A. Lesser Included Offense

The defendant contends that the trial court should have charged the jury on facilitation of the sale of cocaine. In criminal cases, the trial court has the duty to charge the jury on all of the law that applies to the facts of the case. See State v. Harris, 839 S.W.2d 54, 73 (Tenn. 1992). At the time of the defendant's trial, the trial court had the duty to charge the jury on all lesser included offenses included in the indictment even if the defendant did not request it. Tenn. Code Ann. § 40-18-110(a) (1997, amended 2001). Anything short of a complete charge denies the defendant his constitutional right to a trial by jury. See State v. McAfee, 737 S.W.2d 304, 308 (Tenn. Crim. App. 1987). Our supreme court has held that facilitation of the charged offense is a lesser included offense. Burns v. State, 6 S.W.3d 453, 467 (Tenn. 1999).

Although an offense is a lesser included offense, the trial court should not instruct the jury on it unless the evidence supports the instruction. Our supreme court "has consistently required some factual basis for submitting an instruction on an included offense to the jury." Id. If an offense is a lesser included offense, then the trial court must conduct the following two-step analysis in order to determine whether the lesser included offense instruction should be given:

> First, the trial court must determine whether any evidence exists that reasonable minds could accept as to the lesser-included offense. In making this determination, the trial court must view the evidence liberally in the light most favorable to the existence of the lesser-included offense without making any judgments on the credibility of such evidence. Second, the trial court must determine if the evidence, viewed in this light, is legally sufficient to support a conviction for the lesser-included offense.

Id. at 469.

In the present case, the defendant did not ask the trial court to instruct the jury on facilitation of the sale of cocaine. At the hearing on the defendant's motion for new trial, the trial court found that the evidence supported a direct sale of drugs and not a facilitation. The defendant contends that a reasonable jury could have found that he substantially assisted Darrell Jackson in the sale of cocaine by accepting the twenty-dollar bill from Jackson to buy beer while knowing that Jackson was engaged in a drug sale. He asserts that this interpretation is supported by the fact that none of the witnesses saw what, if anything, the defendant passed to Jackson. He also points out that no evidence suggested that Jackson did not have cocaine in his possession before he approached the defendant. The state contends that the record is devoid of proof of facilitation. It argues that its evidence showed that the defendant intended to benefit from the drug sale and that the defendant's version was that he was wholly innocent.

As noted above, the charged offense involved the knowing sale of cocaine. See Tenn. Code Ann. § 39-17-417(a)(3). A person facilitates a felony by knowing that another intends to commit

a specific felony and knowingly furnishing substantial assistance in the felony without intending to promote the offense or to benefit from the proceeds of the offense. Tenn. Code Ann. §§ 39-11-402(2), -403(a). Viewing the evidence in the light most favorable to the existence of the lesser included offense, nothing reflects that the defendant did not sell crack cocaine but knew Jackson was engaged in a drug transaction or reflects that the defendant's acceptance of twenty dollars from Jackson in order to buy beer constituted substantial assistance in the sale of cocaine. The evidence did not justify a charge on facilitation.

## B. Definition of Knowingly

The defendant also contends that the trial court committed plain error because it did not instruct the jury on the proper definition of knowingly. In order to convict the defendant, the jury had to find that he knowingly sold cocaine or knowingly possessed it with the intent to sell or deliver. See Tenn. Code Ann. § 39-17-417(a)(3)-(4). The trial court instructed the jury that

> "Knowingly" means that a person acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist. A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result.

This instruction tracks the statutory definition of knowing. Tenn. Code Ann. § 39-11-302(b). The defendant argues that the instruction lessened the state's burden of proof because it contained all three definitions of knowingly rather than just the applicable definition relating to the awareness of the nature of one's conduct. The state contends that the instruction actually heightened its burden because the jury had to find that the defendant was aware that his conduct would cause a particular result, rather than merely finding that the defendant was aware of the nature of his conduct. It also argues that the jury was instructed to find all three definitions and, thus, it necessarily found that the defendant was aware of the nature of his conduct.

We note that the defendant did not object to the trial court's definition of knowing at trial nor did he raise the issue in his motion for a new trial. Failure to give the trial court an opportunity to correct an error relating to the jury instructions waives the issue on appeal. T.R.A.P. 3(e). Moreover, we see nothing that would constitute plain error. See Tenn. R. Crim. P. 52(b).

## V. SENTENCING

The defendant contends that his effective fifteen-year sentence as a career offender constitutes cruel and unusual punishment under the federal and state constitutions. See U.S. Const. Am. VIII; Tenn. Const. art. I, § 16. He also argues that the trial court should have allowed him to serve his sentence in the community corrections program. The state contends that the trial court properly sentenced the defendant. We agree with the state.

-10-

## A. Cruel and Unusual Punishment

In asserting that his sentence is cruel and unusual, the defendant specifically argues that three of his six prior convictions qualifying him as a career offender occurred within a twelve-day period and should be counted as a single offense. He admits that the twenty-four-hour merger rule, Tenn. Code Ann. 40-35-108(b)(4), does not apply in his case and acknowledges that a drug offender's thirty-year sentence as a career offender has withstood a claim that it was cruel and unusual. See State v. Frank Chester Bright, Jr., No. 01C01-9807-CR-00291, Davidson County (Tenn. Crim. App. Sept. 24, 1999), app. denied (Tenn. Oct. 23, 2000). Nevertheless, he contends that the policies of the Community Corrections Act of 1985 are undermined by the present application of the career offender provision. As such, he argues that his sentence fails to comport with contemporary standards of decency, is grossly disproportionate to his conduct, and is not necessary to achieve a reasonable penological objective. The state contends that the defendant's bare assertions fail to show a national consensus that his sentence is excessive and, thus, fail to show that it is cruel and unusual.

The record reflects that the defendant has the following convictions relating to the sale of cocaine:

| Case No. | Offense Date | Conviction | Sentence |
|---|---|---|---|
| 91-11960 | August 20, 1991 | Possession of cocaine with intent to sell | 4 years |
| 92-06750 | February 26, 1992 | Sale of Cocaine | 8 years |
| 92-06751 | March 3, 1992 | Sale of Cocaine | 8 years |
| 92-06752 | March 9, 1992 | Sale of Cocaine | 8 years |
| 92-06753 | April 23, 1992 | Sale of Cocaine | 8 years |
| 96-03661 | November 21, 1995 | Sale of Cocaine | 3 years |

At the sentencing hearing, the defendant stipulated that the amounts of cocaine involved in the 1992 offenses were 2.3 grams, 2.8 grams, 2.7 grams, and 1.8 grams respectively. He argued that these offenses resulted from an ongoing undercover investigation in which officers successively purchased small amounts of cocaine from him. He contended that the trial court should consider the four 1992 offenses–particularly the three February and March offenses, which occurred within twelve days–to be a single, continuing transaction and sentence him as a multiple offender. The defendant admitted that he had no authority to support his argument but asserted that the principles of the sentencing act reveal that lengthy sentences are intended for violent offenders. He argued that in light of the small amounts of cocaine involved in the 1992 offenses, a long sentence would be disproportionate and violate the Eighth Amendment. The trial court rejected these arguments, counted all six prior felony convictions, and sentenced the defendant as a career offender.

The Eighth Amendment gives large discretion to the punishing jurisdiction to determine appropriate sentencing schemes. Rummel v. Estelle, 445 U.S. 263, 100 S. Ct. 1133, 1145 (1980).

In this regard, our legislature is entitled to "distinguish among the ills of society which require a criminal sanction, and may punish them appropriately without violating constitutional limitations." State v. Hinsley, 627 S.W.2d 351, 355 (Tenn. 1982). In determining whether a punishment is cruel and unusual, we consider (1) whether the punishment conforms to contemporary standards of decency, (2) whether it is grossly disproportionate to the offense, and (3) whether it goes beyond that necessary to achieve a legitimate penal objective. State v. Black, 815 S.W.2d 166, 189 (Tenn. 1991).

In the present case, the trial court properly classified the defendant as a career offender because he was convicted of a Class C felony and had six prior felonies of Class C or greater. See Tenn. Code Ann. § 40-35-108(a)(1). As the defendant acknowledges, the twenty-four-hour merger rule avails him no relief because none of his prior convictions occurred within twenty-four hours as required by the statute. See Tenn. Code Ann. § 40-35-108(b)(4); see, e.g., State v. David Anthony Lee, No.E1999-02537-CCA-R3-CD, Hamilton County, slip op. at 3 (Tenn. Crim. App. Oct. 6, 2000) (holding that the defendant's four convictions for sale of cocaine occurring on February 28, 1987, and March 7, 8, and 13, 1987, were not a single course of conduct under the twenty-four-hour merger rule). As a career offender, the defendant was properly sentenced to the maximum in his range. See Tenn. Code Ann. § 40-35-108(c); see also Tenn. Code Ann. § 40-35-112(c)(3) (providing that a Range III sentence for a Class C felony is ten to fifteen years). As the state observes, the defendant has provided no basis for determining that a fifteen-year sentence for one's seventh drug-related crime offends contemporary standards of decency. Nor do we deem his fifteen-year sentence disproportionate to his offense. See, e.g., Harmelin v. Michigan, 501 U.S. 957, 994-95, 111 S. Ct. 2680, 2701 (1991) (mandatory life sentence for possession of more than six hundred fifty grams of cocaine not cruel and unusual punishment); Hinsley, 627 S.W.2d at 355-56 (determinate sentence of not less than ten years nor more than life for habitual drug offender not cruel and unusual punishment); Frank Chester Bright, Jr., slip op. at 15-16 (thirty-year sentence as a career offender for possession of twenty-six grams of cocaine with intent to deliver not cruel and unusual punishment).

Finally, we do not view the defendant's sentence to go beyond what is needed to achieve a legitimate penological goal. Obviously, the legislature determined that those repeatedly committing serious felonies constituted a more serious threat to our society and were deserving of substantial punishment. See Tenn. Code Ann. § 40-35-105, -106, -107, -108, -112. The defendant summarily argues that the policies of the Community Corrections Act are undermined by the interpretation and application of the career offender statute. We note that the mere fact that a defendant is a career offender does not make him or her ineligible for community corrections. See Tenn. Code Ann. § 40-35-106(a). We conclude that the trial court did not err in sentencing the defendant as a career offender and that a sentence of fifteen years, as properly calculated under the Sentencing Act of 1989, is not cruel and unusual punishment for this offense and this offender.

## B. Denial of Community Corrections

The defendant also challenges the manner of service of his sentence, contending that the trial court should have placed him on community corrections. The presentence report reflects that the

thirty-year old defendant reported graduating from high school in 1991 and completing a carpentry program in 1998. The report notes that the defendant's high school graduation was not verified due to the length of time since he attended the high school. The defendant reported that he did not currently use illegal drugs and had never received drug treatment. He stated that he had used marijuana once at age sixteen but did not use it again and had not used any other illegal drugs. The report notes that the defendant's presentence report in a previous case states that he successfully completed a substance abuse program in 1995.

The presentence report reflects that the defendant has two children with his fiancé and another child with Tarsha Coleman, whom the defendant owes $2294 in back child support. The report reveals the defendant worked in room service at the Brownstone Hotel, earning $4.25 per hour, from January 1, 1995, until December 1, 1995, when he resigned. He reported working as a painter for Lewellyn Manufacturing, earning $11 per hour, from January 1, 1998, until June 11, 1999. The defendant stated that he lost this job when he was arrested for the present offenses. In addition to the six prior, drug-related felonies discussed above, the presentence report reflects that from age nineteen to age twenty-eight, the defendant received nine misdemeanor convictions for the following offenses: underage possession of alcohol, criminal trespass, two convictions for drug possession, driving with a revoked license, three convictions for simple assault, and a violation of the driver's license law.

The trial court also considered a presentence investigation report prepared particularly for community corrections sentencing ("community corrections report"). The report states that the defendant meets the minimum eligibility requirements for a community corrections sentence. It notes that the records personnel at the defendant's high school could not locate any information confirming the defendant's graduation, and it recommends that the defendant obtain his GED. The report notes that the defendant has two children, who live with him and their mother, the defendant's fiancé. The report reflects that the defendant was employed as a painter with Lewellyn Manufacturing from June 1999 until May 2000, when the business closed. It states that he worked as a waiter at Brownstone Hotel from September 2000 until he quit in December 2000 and that he was a landscaper with Trees Etc. from December 2000 until April 2001, when he was incarcerated. The defendant reported that he did not use alcohol or illegal drugs. The community corrections report reflects that two of the nine misdemeanor convictions listed in the presentence report–the convictions for criminal trespass and underage possession of alcohol–had been dismissed by nolle prosequi. The report states that the defendant's parole had been revoked once.

At the sentencing hearing, the defendant testified that he was innocent of the present offenses and had been incarcerated just over five months. He said that he was addicted to cocaine and had sold drugs to support his cocaine habit. He said that his answer on the presentence report regarding drug and alcohol use was due to a misunderstanding. He said that the interviewer asked if he could currently pass a drug test and that he said yes. He explained that when she asked if he used drugs and alcohol, he thought she was referring to the present time and said that he did not do so now.

The defendant testified about his history of cocaine abuse, stating that after he was released from jail on his first drug offense, he was using five to seven grams of powder cocaine daily and decided to sell drugs to support his habit. He admitted that he was on bond for his 1991 drug offense, when he committed the four 1992 cocaine offenses. He said following those convictions, he was incarcerated for two years and started getting help for his addiction. He acknowledged that while on parole for his prior offenses, he was arrested for selling cocaine in 1995. He stated that he was not a drug dealer at that time but agreed to make a sale for a dealer in order to get some drugs for himself. He said that this offense violated his parole and that he then served two years at the penal farm. He said that when he was released in 1998, he enrolled in carpentry school. He admitted attending drug treatment, including an intensive, year-long drug program at the penal farm, but said he had never been to a hospital for drug treatment. He asked for the trial court's help in getting treatment for his addiction.

The defendant testified that he had graduated from high school and did not know why the school had no record of his graduation. He confirmed the employment history given in the community corrections report and stated that in addition to these jobs, he had worked in his uncle's landscaping business while growing up. He stated that he had three children, of which two lived with him and one lived out-of-town. He said that when the interviewer asked how many children lived with him, he answered two. He stated that if he were granted an alternative sentence, he would continue to live with his fiancé. He said that after taking a math test, he would be eligible to enter the carpenters' union and that the owner of Trees Etc. had offered to hire him upon his release.

On cross-examination, the defendant admitted that he also did not tell the community corrections interviewer that he had a drug problem. He said that he could not count the number of times that he had sold drugs and not been caught. He said that he had a maturity problem and had "stagnated" because he was on drugs. He admitted that he was fascinated with the drug trade. He agreed that being in jail would prevent him from selling drugs but stated that he would not sell drugs this time if released.

The trial court declined to sentence the defendant to community corrections because of his extensive criminal history, the need to deter others from selling drugs, and to avoid depreciating the seriousness of the offense. It also found that the defendant had been untruthful regarding his history and background.

Appellate review of sentencing is <u>de novo</u> on the record with a presumption that the trial court's determinations are correct. Tenn. Code. Ann. §§ 40-35-401(d), -402(d). As the Sentencing Commission Comments to these sections note, the burden is now on the appealing party to show that the sentencing is improper. This means that if the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, we may not disturb the sentence even if a different result were preferred. <u>State v. Fletcher</u>, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

However, "the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In this respect, for the purpose of meaningful appellate review,

> the trial court must place on the record its reasons for arriving at the final sentencing decision, identify the mitigating and enhancement factors found, state the specific facts supporting each enhancement factor found, and articulate how the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. T.C.A. § 40-35-210(f) (1990).

State v. Jones, 883 S.W.2d 597, 599 (Tenn. 1995).

In the present case, the defendant contends that we should not afford the trial court's findings a presumption of correctness because it characterized a community corrections sentence as "something light." He summarily argues that this improper characterization colored the trial court's judgment and is "contrary to the statutory policies mandated by the legislature regarding community based sentencing." We agree that a community corrections sentence should not be perceived as a "slap on the wrist" rather than a serious punishment in the appropriate circumstances. State v. Cummings, 868 S.W.2d 661, 667 (Tenn. Crim. App. 1992). On the other hand, the trial court's comment that community corrections was a light sentence was made in the context of how others contemplating selling drugs would view the defendant's sentence to community corrections as opposed to a sentence of confinement. Because the trial court made findings and identified its reasons for denying community corrections on the record, we believe it is entitled to the presumption of correctness.

In conducting a de novo review, we must consider (1) the evidence, if any, received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made on his own behalf and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210; see Ashby, 823 S.W.2d at 168; State v. Moss, 727 S.W.2d 229 (Tenn. 1986).

Only persons convicted of nonviolent felony offenses not involving a weapon and "who do not demonstrate a present or past pattern of behavior indicating violence" nor "a pattern of committing violent offenses" are eligible for community corrections. Tenn. Code Ann. § 40-36-106(a)(3)-(6). The defendant does meet the minimum criteria for a sentence to the community corrections program because he would otherwise be sentenced to incarceration; he was convicted of a non-violent, drug-related felony; he did not use or possess a weapon in the commission of the offense; and he was not sentenced to incarceration or on escape at the time of sentencing. Tenn. Code Ann. § 40-36-106(a)(1)-(6). Although the defendant has three convictions for simple assault occurring in 1992, we do not believe these represent a pattern of violence that would make him

-15-

ineligible for community corrections. See Tenn. Code Ann. § 40-36-106(a)(6). Meeting these minimum criteria does not guarantee a defendant admission to the community corrections program. See State v. Taylor, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987). Instead, they are minimum standards to guide the trial court on which defendants should be considered for this program. Tenn. Code Ann. § 40-36-106(d). Furthermore, as the state points out, we do not presume that the defendant is a favorable candidate for an alternative sentence due to his status as a career offender. See Tenn. Code Ann. § 40-35-102(6).

A sentence of confinement should be based on the need to protect society by restraining a defendant with a long history of criminal conduct, to avoid depreciating the seriousness of the offense, or to deter effectively others who are likely to commit similar offenses. Tenn. Code Ann. § 40-35-103(1)(A)-(C); see Ashby, 823 S.W.2d at 169. Furthermore, the defendant's potential for rehabilitation or lack thereof should be examined when determining whether an alternative sentence is appropriate. Tenn. Code Ann. § 40-35-103(5).

The evidence does not preponderate against the trial court's finding that the defendant's long history of convictions required a sentence of confinement. In less than ten years, the defendant had amassed six drug-related felony convictions and at least seven misdemeanor convictions, two of which also related to drugs. The defendant admitted that he had sold drugs many times and that, other than the time he spent incarcerated, he had used five to seven grams of cocaine daily from 1991 to 1995. The defendant argues that the trial court's imposition of a sentence of confinement due to his criminal record under section 40-35-103(1)(A) conflicts with his eligibility for community corrections despite his prior felonies under section 40-36-106(b). Tenn. Code Ann. § 40-36-106(b) provides that

> [o]ffenders shall not be excluded from the [community corrections] program on the basis of prior convictions for nonviolent felony offenses, but may, at the discretion of the court and local community corrections advisory board, be excluded on the basis of prior convictions for felony offenses which would not meet the eligibility criteria provided in subsection (a).

We agree with the defendant that his record does not prevent him from meeting the eligibility criteria for community corrections. While this provision would qualify him for community corrections despite his extensive criminal history, we note that the community corrections act must be read together with the sentencing act as a whole. See State v. Wagner, 753 S.W.2d 145, 147 (Tenn. Crim. App. 1988) (holding that the community corrections act "is in pari materia with the Tennessee Criminal Sentencing Reform Act of 1982" and affirming the denial of community corrections based in part upon the defendant's long criminal history, consisting primarily of property-related offenses). In this respect, the defendant's lengthy criminal record reflects negatively on his amenability to rehabilitation. See Tenn. Code Ann. § 40-35-103(5). This is especially true when we consider the fact that the defendant sold drugs while on bond and on parole. Such, alone, justifies confinement.

-16-

The defendant contends that the record is devoid of evidence to support the trial court's finding that a sentence of incarceration is necessary to deter effectively others likely to commit similar crimes. He also argues that the circumstances surrounding the present crimes were not exaggerated or excessive and that, thus, an alternative sentence would not depreciate the seriousness of the offenses. The trial court found the following with regard to deterrence and depreciation:

> The Court also finds that the deterrent effect in this case is very important. You have been selling drugs for ten years in this community and the Court feels that confinement is necessary to gird up the deterrents in this matter. If it appears that the person who's been selling drugs continuously for about ten years in this community, and is placed on some alternative to incarceration or probation then it would send the wrong signal to other people out there on the question of whether or not they should violate the law. And, it won't deter anyone from getting into this same business. If you can be placed on something light after having committed offenses over a ten-year period of selling drugs. . . . . The Court also feels that it would depreciate the seriousness of this offense and the offenses over the period of ten years if the Court grants your petition. And, the Court further feels that confinement is particularly suited to provide this effective deterrent to others likely to commit similar offenses.

Although we agree with the defendant that the record contains no evidence of the prevalence of drug offenses in the defendant's community, we believe that confinement is particularly suited to deter other criminal recidivists like the defendant.

Because every sentence for a criminal conviction involves an aspect of deterrence, the significance that deterrence plays in determining the sentence in a given case is closely linked with the type of offense and the surrounding facts. State v. Davis, 940 S.W.2d 558, 560 (Tenn. 1997). Therefore, the trial court's finding of a need for deterrence "'cannot be conclusory only but must be supported by proof.'" Id. (quoting Ashby, 823 S.W.2d at 170). In Davis, our supreme court held that the trial court's determination that deterrence was necessary was supported by its findings that a labor dispute in the community had escalated into threats against the victim coworker and vandalism of her property. These findings were sufficient to warrant a sentence of confinement in order to deter others from acting in the same way. Id. In the present case, the trial court found that the defendant's ten-year history of drug-related offenses required confinement in order to deter others in the community who were considering becoming involved in recidivist drug activity. The defendant's seven drug-related felonies occurred within nine years and, if his two misdemeanor convictions for possession of a controlled substance are considered, the time frame widens to ten years. This history indicates a sustained intent to engage in criminal activity relating to controlled substances. Generally, the nature of the crime alone will not support a finding of depreciation of the seriousness of the offense when the legislature has allowed an alternative sentence, but the defendant's conduct can make confinement particularly suitable for that defendant. See State v.

Gutierrez, 5 S.W.3d 541, 647 (Tenn. 1999) (holding that the defendant's acknowledging little culpability for his conduct justified a sentence of confinement). In the present case, the defendant's criminal conduct justifies confinement to avoid depreciating the seriousness of the offense and is particularly suited to impress upon recidivists as well as the defendant himself the seriousness of the defendant's actions.

The defendant also contends that the trial court improperly denied community corrections based upon its finding that he was untruthful. He argues that while lack of candor may be an appropriate basis for denial of probation because it is probative of the potential for rehabilitation, it cannot justify the denial of a community corrections sentence. Our legislature has determined that "the potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative." Tenn. Code Ann. § 40-35-103(5). In this respect, the trial court may consider the defendant's untruthfulness in denying a community corrections sentence. See State v. Zeolia, 928 S.W.2d 457, 463 (Tenn. Crim. App. 1996) (considering the defendant's untruthfulness as relevant to his potential for rehabilitation with regard to alternative sentences, including a community corrections sentence). Thus, the trial court's finding that the defendant was untruthful supports its imposition of a sentence of confinement.

Moreover, the evidence surrounding the defendant's sale and use of cocaine reveals that the defendant was properly sentenced to confinement based upon his lack of amenability to rehabilitation. As noted above, the defendant admitted selling and using drugs for nearly ten years. The defendant sold drugs while on bond and on parole. He continued to use drugs despite receiving drug treatment while incarcerated. Although the defendant blamed his actions on his drug problem, he continued to commit crimes without seeking additional treatment. We believe the record demonstrates that the defendant does not reflect a high potential for rehabilitation and supports the sentence of incarceration imposed by the trial court.

## CONCLUSION

Because the trial court erroneously ruled that the defendant's prior felony drug convictions were admissible to impeach him should he testify, we reverse the convictions and remand the case for a new trial.

_____
JOSEPH M. TIPTON, JUDGE

-18-