STATE of Tennessee, Appellee,

v.

**Craig Allen BLAKELY, Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

Oct. 5, 1983.

Permission to Appeal Denied by Supreme Court Dec. 27, 1983.

Joseph M. Tipton, Knoxville, for appellant.

William M. Leech, Jr., Atty. Gen., J. Andrew Hoyal, II, Asst. Atty. Gen., Nashville, David G. Ballard, Dist. Atty. Gen., Steven R. Hawkins, Asst. Dist. Atty. Gen., Maryville, for appellee.

## OPINION

RICHARD R. FORD, Special Judge.

The appellant-defendant, Craig Allen Blakely, appeals as of right the judgment on his conviction for the possession of thirty (30) grams or more of cocaine with the intent to sell and deliver it, for which he was fined two hundred thousand dollars ($200,000.00) and received a sentence of forty-five (45) years. He also appeals from the judgment on his conviction for the possession of marihuana with the intent to sell and deliver it, for which he received a fine of three thousand dollars ($3,000.00) and a concurrent sentence of not less than two (2) nor more than five (5) years. The defendant challenges the overruling of his motion to suppress, the sufficiency of the evidence, the denial of individual voir dire, the admission of evidence of defendant's prior flights to Colombia, the admission of testimony as to the defendant's definition of the word "cool," the correctness of the jury instructions, and whether the consolidation of his two (2) cases resulted in cruel and unusual punishment in violation of the defendant's constitutional rights. We affirm the judgments of the trial court.

A summary of the evidence presented at the suppression hearing reveals that James Bradley Yonts, Port Director of the United States Customs Service, stationed at the McGee Tyson Airport in Blount County, was alerted at 7:59 a.m. on March 9, 1982, by a tower operator, that an aircraft with reported tail number "N446" had been transferred, for radar control, from the Atlanta Center to the Knoxville Center. The aircraft being of interest to the Customs Service, and having been previously recorded as tail number "N644" by the Treasury Enforcement Communications System as a suspicious aircraft, Director Yonts immediately called other Customs officials in Nashville and in New Orleans. Additionally, he called the Airport Security Officers, the Tennessee Bureau of Identification and the Knoxville Police who also notified the Sheriff of Blount County. The aircraft landed at McGee Tyson Airport shortly after 8:00 a.m. The prompt action of Director Yonts set in motion a chain of events culminating in a United States Customs border search and seizure of the defendant's aircraft with its cargo which included thirty-seven (37) bales of Columbian marihuana, and a brief case with two (2) packages containing a total of three hundred ninety-one point one (391.1) grams of cocaine. After the seizure, the United States Customs Service officer transferred both the aircraft and its cargo, and all other contents to the Tennessee Bureau of Identification for disposition pursuant to Tennessee law. The defendant did not testify either in his motion to suppress or the trial of his cases.

The evidence adduced at the suppression hearing revealed that a Customs agent, who was on duty in the Knoxville control tower, established visual contact with the

aircraft at approximately 8:00 a.m. It had been described as a high wing, twin engine, Aero Commander with tail number N644. On landing it was parked on a taxi apron of an aircraft service office where the Customs officer observed two (2) individuals alight. Descriptions of them were furnished to the local and State officers who came to assist in maintaining a surveillance of both the aircraft and the two (2) suspects. Utilizing electronic communications and conducting further investigation, it was learned by the Port Director and the investigating officers that the same aircraft, with two (2) individuals of the same descriptions, had landed heavily laden at Gainesville, Florida, shortly after 3:30 a.m., and that after refueling, departed at 4:00 a.m. The filed flight plan showed Miami as the destination, but instead of flying south, the aircraft flew northward to Knoxville, its occupants using the false tail number "N446."

Detective Randy Kidd of Blount County, and Lieutenant Charles Coleman, Chief of the Knoxville Police Narcotic Squad, were aware of the foregoing information as they maintained their surveillance of the two (2) suspected drug violators.

Meanwhile, Port Director Yonts awaited a decision by Customs officials as to whether a border search was to be conducted. Between 10:45 and 11:00 a.m. the two (2) suspects began to move and walked away from the service area. They were followed and apprehended on Highway 129 near Quality Court Motel. They identified themselves as John Allen Ashley and Craig Allen Blakely, the latter having pretended to be a passenger from the passenger terminal.

After being advised of their constitutional rights, the codefendant, John Allen Ashley, voluntarily gave a statement at 11:45 a.m.

United States Customs Officer, Meek C. Kiker, of New Orleans, in response to Port Director Yonts' call, arrived on the scene at approximately 1:30 p.m., where he conferred with the State and local officers. He personally interviewed Ashley before deciding that the aircraft had been "foreign" and was subject to a border search. Customs Officer Kiker testified:

> Uh, I made it understood before we got out there to the aircraft, that the aircraft would be under customs search or seizure. And that after we had opened the aircraft then I would be releasing the aircraft and its contents to the State.

Under the direction of Customs Officer Kiker the State and local officers assisted with the opening of the still locked aircraft. After the removal of thirty-seven (37) bales of marihuana, weighing a total of one thousand one hundred and seventy (1,170) pounds, the aircraft, its contents and the contraband were then transferred to Agent William McBee of the Tennessee Bureau of Identification, who made a continued search effort. The continued search effort yielded the defendant's finger prints and various items of physical evidence found in the cockpit, and in plain view, an unzipped brief case containing flight charts, the defendant's personal supply of insulin with hypodermic syringes, and the two (2) packages of cocaine. The defendant had acknowledged that he is a diabetic. The trial court overruled the motion to suppress.

The defendant argues that the border search was "based upon information derived from illegality" allegedly attributed to the warrantless detention and arrest of the defendants, particularly the defendant, Ashley.

■ We note, however, that the Federal Government has a legitimate and reasonable purpose in conducting customs examinations of individuals and their personal property. The evidence revealed that the United States Customs officers directed and completed a post-entry border search and seizure before Federal transfer of the aircraft and all its contents to the State of Tennessee. The trial judge, after considering all the evidentiary factors, found, *inter alia*, that "[u]nder that evidence there was certainly strong reason to believe, not merely suspect, that a violation of the law of Tennessee had occurred, that is a transportation of controlled substance." On

consideration of the evidence that the aircraft, enroute from Haiti, landed heavily laden at Gainesville and remained there only long enough to refuel; that the defendant had filed a false flight plan for Miami; and that the aircraft was electronically monitored until its arrival in Blount County, Tennessee, where it was under constant surveillance, there was a reasonable certainty that the contraband was in the aircraft at the time of its initial entry, thus justifying the post-entry border search. *See Alexander v. United States,* 362 F.2d 379 (9th Cir.1966). It is settled law that a border search is a recognized exception to the warrant requirement of the Fourth Amendment. *United States v. Ramsey,* 431 U.S. 606, 97 S.Ct. 1972, 1981, 52 L.Ed.2d 617 (1977).

We are not persuaded that Ashley's statement was illegally obtained. Given the exigent circumstances existing during the officers' ground surveillance of the defendants and the aircraft, and the officers' noting the defendants' movement on foot from the area to a public highway, the trial court properly held there was probable cause to detain them, and specifically ruled "that it was not a violation of Mr. Ashley's Fourth Amendment rights against a seizure," and that "the intrusion upon Mr. Ashley's freedom at that point was minimal." The trial judge ruled that the officers "had the highest probable cause to believe that there was controlled substance on board." In addition to there being a valid set of circumstances warranting the post-entry border search, the enumerated factors and totality of the circumstances, as reviewed by the trial judge, constituted probable cause for the warrantless detention and arrest of the defendants. The rule in this State is that the findings of the trial court upon questions of fact are conclusive unless the appellate court finds the evidence preponderates against the lower court's judgment. *State v. Foulks,* 653 S.W.2d 430 (Tenn.Cr.App.1983).

A warrantless search is justified where probable cause and exigent circumstances exist. *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed.2d 543 (1925); *Taylor v. State,* 551 S.W.2d 331 (Tenn.Cr.App.1976). Moreover, the detention and the arrest of the defendant Ashley violated no right of privacy of the defendant Blakely. We conclude that the trial court properly overruled the defendant's motion to suppress.

Next, we consider the sufficiency of the evidence issue. Testifying for the State the accomplice, John Allen Ashley, an experienced pilot and the airport base station manager at Big Rapids, Michigan, related to the court and jury that the defendant had hired him to "pick up refugees"; that he was to be paid forty thousand dollars ($40,000.00) for a single trip to an undisclosed destination in South America. Ashley flew the old Aero Commander, tail number N644, purchased for seventy thousand dollars ($70,000.00) two (2) days earlier by the defendant who had it equipped with illegal fuel bladders. The defendant, equipped with low altitude air charts, directed and Ashley flew the aircraft from Grand Rapids, Michigan, to London, Kentucky; to Vero Beach, Florida; to Fort Lauderdale; to Port-au-Prince, Haiti; then to a gravel air strip in Colombia, where an awaiting group of men loaded the bales of marihuana, and where the brief case containing the cocaine was handed up to the defendant. After an improvised refueling, the defendant directed the heavily loaded aircraft back to Port-au-Prince where customs officials were bribed and the aircraft permitted to depart.

The aircraft next landed at Gainesville, Florida, for a brief rest stop and refueling. Without a United States Customs inspection the defendant next directed Ashley to fly to the Knoxville McGee Tyson Airport for refueling. The defendant had a planned lay-over at McGee Tyson to accommodate a planned 6:00 p.m. arrival in Grand Rapids, the place of origin. On each landing the defendant made telephone calls using a pre-arranged code. Before they could make their departure for the last leg of their journey they were arrested and the United States Customs border search and

seizure were completed. The testimony of the accomplice is amply corroborated.

We have carefully reviewed the entire record and have considered the defendant's insistence that the evidence is insufficient to warrant his cocaine conviction. We are satisfied that the evidence meets the sufficiency requirements of *T.R.A.P.* 13(e) and *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

■ A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State. *State v. Hatchett*, 560 S.W.2d 627 (Tenn. 1978). On appeal the State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. *State v. Cabbage*, 571 S.W.2d 832 (Tenn. 1978) A jury verdict should be set aside only if the evidence is insufficient for a rational trier of the fact to find the defendant guilty beyond a reasonable doubt. *State v. Tuggle*, 639 S.W.2d 913 (Tenn. 1982).

■ Next, we have considered the defendant's contention that the trial court erroneously denied individual voir dire of prospective jurors. After our review of the voir dire proceedings we have reached a different conclusion. The voir dire rests within the sound discretion of the trial court. *State v. Jefferson*, 529 S.W.2d 674, 682 (Tenn.1975); *State v. Smith*, 554 S.W.2d 648, 651 (Tenn.Cr.App.1977). It is the prevailing practice in Tennessee to collectively voir dire prospective jurors. *Bouchard v. State*, 554 S.W.2d 654 (Tenn. Cr.App.1977).

■ The mere exposure of prospective jurors to publicity is not constitutional error. *Lackey v. State*, 578 S.W.2d 101 (Tenn.Cr.App.1978). Even though a prospective juror has read or heard some publicity about a case, or heard some person mention it, that is not sufficient to disqualify him if he is otherwise qualified and he states on oath, notwithstanding what he read or heard, he believes he can give the defendant a fair and impartial trial on the

law and the evidence. *Dukes v. State*, 578 S.W.2d 659, 664 (Tenn.Cr.App.1978).

The trial court was satisfied from the voir dire proceedings that the chosen jurors' exposure to the media or other sources was not so significant as would require their individual voir dire. We agree. *See Sommerville v. State*, 521 S.W.2d 792 (Tenn.1975). We conclude that there was no abuse of discretion by the trial court.

The defendant argues that the trial court erroneously admitted evidence that the defendant had made previous flights to South America.

■ The accomplice, Ashley, was permitted to testify that the defendant had said that he had been to Colombia five (5) times previously, and mentioned the peninsula on the west side of Haiti where he arrived at different points. From our examination of the record we have determined that the trial court correctly concluded that the evidence of the defendant's trip to the same peninsula in Colombia was sufficiently relevant for admission on the issue of the defendant's continuing scheme and plan to traffic in the charged controlled substances, and that such probative value outweighed any prejudicial effect. *See Bunch v. State*, 605 S.W.2d 227, 229 (Tenn. 1980); *see also* McCORMACK, *HANDBOOK OF THE LAW OF EVIDENCE*, § 157 (1954). There is no merit to this issue.

Next, the defendant argues that the trial court erred in permitting the accomplice to testify on the meaning of the word "cool" as used by the defendant in describing Knoxville McGee Tyson Airport.

■ On examination of the record we note that the accomplice Ashley actually responded:

> A. Well, *cool to me* means that, uh, there would be no problem. That, uh, he had successfully entered and exited the airport previously. (emphasis added)

Thus, the witness gave his own definition of the vernacular usage of the controverted word. To the extent, if any that such

definition was attributable to the defendant, and considering the evidence of the activities of the defendant and his accomplice pilot, the use of such slang commonly associated with such activities is not unexpected. The error, if any, is harmless. *T.R.A.P.* 36(b); *Tenn.R.Crim.P.* 52(a).

The defendant next asserts that the trial court erroneously refused to give the defendant's specially requested jury instructions in his theory of defense, his proposed cautionary instruction that the jury examine and weigh with greater care the testimony of a person who receives immunity than that of ordinary witnesses, and his proposed instruction on the law of accomplice.

The defendant was entitled to have a correct and complete charge given to the jury. *Strader v. State,* 362 S.W.2d 224 (Tenn.1962). We have carefully examined the record of the evidence adduced and the trial court's complete instructions to the jury. We note that the trial court charged, *inter alia,* the defendant's pleas of not guilty, the presumption of innocence, the elements of each charged offense, the proper lesser included offenses, the State's burden of proof, the applicable Tennessee law of accomplice, and that in the event of conviction, the applicable ranges of punishment.

We conclude that the special requests were properly denied. The trial court's general charge was both correct and complete. It is not error to refuse a special request where the charge as given fully and fairly states the applicable law. *Edwards v. State,* 540 S.W.2d 641, 649 (Tenn. 1976). This issue is without merit.

Finally, we have examined the defendant's contention that his marihuana case and his cocaine case were erroneously consolidated resulting in cruel and unusual punishment. The evidence adduced throughout the trial was demonstrative of a common scheme or plan to make a flying trip to Colombia and return with a plane load of alleged controlled substances. Whether marihuana or cocaine, the logistics were essentially the same in each case. If there had been separate trials the evidence of one case would have necessarily included evidence of the other. The trial court considered and recognized that the alleged offenses were part of a common plan within the meaning of *Tenn.R. Crim.P.* 14(b)(1); *State v. Peacock,* 638 S.W.2d 837 (Tenn.Cr.App.1982).

Both the sentences meted out by the jury are within the range prescribed by law. The convictions having been based on evidence involving, in part, a single intercontinental movement of a large amount of the controlled substance charged in each respective indictment, the sentences cannot be considered excessive, nor are they indicative of passion, prejudice, or caprice on the part of the jury. *Dukes v. State, supra.* Nor is it cruel and unusual punishment. *See Rummel v. Estelle,* 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980); *State v. Hinsley,* 627 S.W.2d 351 (Tenn. 1982). We conclude that it was not error to consolidate the defendant's cases.

There being no reversible error in the record, the judgments are affirmed.

DUNCAN and CORNELIUS, JJ., concur.